Good morning, I'm Phil Hantel, I represent Mr. Thomas Wilson, if it pleases the Court. I presented two brief arguments in this case, the first one revolving around the sufficiency of evidence to sustain a conviction of second degree murder in this case, and the second one involved the jury instruction as to, as second degree murder compared to involuntary manslaughter and the quantum of recklessness, as I termed it, that was needed to be shown in those two instructions. And I would like to move to the jury instruction itself, I think that it would be more fruitful to discuss that during argument. As I noted in my brief, the Court basically instructed the jury on every possible responsive verdict in this matter, from first degree murder all the way down to involuntary and involuntary manslaughter, I guess because of the unique facts of this case. In its second degree murder charge, it said that the jury could infer malice of forethought if the defendant acted recklessly with an extreme disregard for human life, and then, as opposed to involuntary manslaughter, that it was a lawful act done with wanton or reckless disregard for human life. The trial counsel objected and said that he thought that the quantum of recklessness or the differentiation in recklessness was needed further based on the facts of the case and also cited a case from this Court, which was Lucena, I guess, if I'm pronouncing it correctly, where this Court, in fact, reversed the conviction based on the same type of argument. Based on the Court decline to give any further differentiation relative to those two obstructions, and the defendant was ultimately convicted of second degree murder, and we'd submit that it was error not to go further and qualify what is the degree of recklessness that the jury needs to consider to differentiate between the extreme disregard and the wanton or reckless disregard. I understand this. If I understand you correctly, this distinction between involuntary manslaughter and second degree murder is the issue that you're bringing before us. Correct. But the record also indicates, and I want your clarification, there's no objection raised to that during trial, correct? Raised to that issue. There's no objection during trial. Well, I think that there was during jury instructions. That's interesting because all of my reading shows there wasn't. So why don't you cite to us in the record exactly where an objection was raised to a jury instruction requesting additional definition between involuntary manslaughter and second degree murder. Judge, I didn't mean to say that you were wrong in the sense that it wasn't my – and I agree with you that it wasn't objected to probably as clearly as it needed to be. Well, clearly or unclearly, my reading is that it wasn't objected to. The issue is whether we review this for error or plain error. If there's no objection, a reasonable objection so the trial judge can address the issue, then we only review for plain error, which makes your challenge a little more difficult. Correct. And that is true. Why don't you read the objection? You have the objection in front of you that was raised. No. I think the issue, and I understand that the government brought this up, was the fact that they were talking about manslaughter, quote, unquote. There was never any differentiation between during the instructions, the discussion of the instructions or otherwise, as to whether it was involuntary or voluntary manslaughter. And I addressed that in my reply brief when I discussed that, in fact, Lucina discussed the involuntary manslaughter charge. But I agree with this Court. There was never any specific objection to the involuntary manslaughter charge in this case. So we review for plain error. I suggested that that is incorrect because, in fact, I believe that everybody was on notice at the time in the Court during this discussion based on Lucina. I also pointed in my reply brief. Based upon Lucina, how was the – how did you raise this? If there was no objection, how was the issue raised to the trial judge? The trial counsel, in fact, argued that specific case. I believe that the trial court noted in the record that they had, in fact, reviewed the case in chambers and then came back and declined to add those additional – that additional instruction. So just because the Lucina trial opinion was argued, you're suggesting that there's been a specific objection? I'm not suggesting that there's been a specific objection. I cannot argue that point to you. I'm saying that there's enough – Okay. Then what case would you rely upon that if there's just a case decided, that that is sufficient so that we review for error rather than plain error? I do not have a case that says that. I'm arguing specifically as to the facts of this case that it was sufficient to put the court on notice of what the objection was, Judge. Okay. At Brett 13, the response brief, it indicates that the defendant below requested a jury instructions that contained the exact language about which the brief now complains. I wanted to know if you agreed with that statement of the government. To a certain extent, yes, Judge, I do. What I think the trial counsel was trying to get at, and perhaps it wasn't as clear as it might be, was that there needed to be, based on this quantum of what I've termed quantum – I don't know how else to describe it – that there needed to be And then the instruction that was asked for by trial counsel, there needed to be further clarification as to the degree of recklessness that the jury had to look at in order to distinguish between the two charges. So then trial counsel proposed a jury instruction, if the government is correct, that is – contains the same language. As that this court qualified in Lucena, that's correct. So the question is whether this is invited error, that is. I understand that, Judge. And what's your position? Is this invited error? I would suggest that it is not. I think the trial counsel may – perhaps was not as clear as he needed to be on where he was going with this. I think – but he did ask for it, and I cannot change those facts. Okay. Professor, is there some time for rebuttal, please? Okay, thank you. We'll hear from the government. May it please the Court, I'm Vincent Kirby, Assistant United States Attorney from the District of Arizona, and was trial counsel. As of – our plan here is that, for the most part, we will rely on what we filed in our brief. We believe that what counsel may have been trying to do at trial is to distinguish some sort of recklessness as to manslaughter, differentiating it from second-degree murder, when in fact the degree of recklessness is the same, it is the heat of passion which is the difference between second-degree murder and manslaughter. And that, as the Court notes, that when we actually got the involuntary manslaughter instruction, there was no objection posed. This all came up in connection with the manslaughter instruction, which they had originally posed in the written submissions prior to trial, and that counsel orally tried to propose something that the Court did not accept, but that's because the Court had properly instructed the jury in the written instructions. Well, it seems as though that trial counsel was trying to make this argument. He's – I agree with you it may have been on the wrong instruction, but it takes up The instruction says any objection, and trial counsel cites to Licina, argues Licina. You argued, and the Court finally says, I'm not going to alter the instruction. And then goes on to involuntary. There's certainly no argument that we argued Licina, that it was discussed, but it seemed like trial counsel was trying to find – use Licina's language in the voluntary manslaughter instruction. He never said the word involuntary, and in fact, when it came up, he never said, Judge, as previously noted, my objection, I won't belabor it. I think he was trying to establish that there's some difference in the degree of recklessness for manslaughter, and there just isn't. It's the same degree of extreme recklessness that second degree requires for, the only difference being whether or not the heat of passion, adequate provocation, negates that same intent required for second-degree murder. And unless the Court has any other questions, we'll rely on our answers. Okay. Roberts, thank you. The case is here to be submitted. Oh, I'm sorry. I did promise you time for a button. Okay. We'll proceed to the argument on the next case, which is Nellam v. McGrath.
judges: Wallace, Thomas, Ezra